**Mark KEMPTON, et al., Respondents,**

v.

**W. David DUGAN, et al., Appellants.**

**No. WD 66368.**

Missouri Court of Appeals, Western District.

March 20, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 1, 2007.

Application for Transfer Denied June 26, 2007.

Lee H. Bushie, Rolla, MO, for Appellants.

Susan F. Robertson, Dale Reesman, Wade H. Ford, Jr., Columbia, MO, Co–Counsel for Respondents.

Before SMART, P.J., EDWIN H. SMITH and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

This appeal arises from a judgment granting specific performance for the distribution of trust assets based on an alleged oral agreement. We reverse, finding that the trial court erred in considering parol evidence of an oral agreement without determining that the terms of the trust were ambiguous.

## I. FACTUAL AND PROCEDURAL HISTORY

William and Jane Dugan were married on January 30, 1964. William had three children from a previous marriage: W. David, Patricia, and Michelle Dugan ("Dugans"). Jane had four children from a previous marriage: J. Michael, Mark, and Charles Kempton, and Kathy Kempton Loveland ("Kemptons").

In 1989, William was hospitalized for what was initially thought to be a serious heart condition. The illness prompted William and Jane to contact an attorney regarding estate planning. At their request, two revocable trusts were created, one for Jane and one for William. Each trust provided for income support to the surviving spouse and passed the residuary of the trust assets to the Dugan and Kempton children, in seven equal shares, upon the death of the trust's grantor. Nearly two years after executing the trust documents, William and Jane began funding their respective trusts in 1991.

Jane died on February 2, 2000. As required by the terms of her trust, William thereafter received income support for life, with the residuary of her trust assets due to pass to the seven children in equal shares upon William's death.

William married Margaret Dugan in June 2002. In January 2004, William exercised the option to revoke his trust by executing a new trust agreement that passed the residuary of his trust assets only to his three natural children, the Dugans.

William died on January 29, 2005. Thereafter, the residual assets of Jane's trust were distributed to all seven children, but the Kemptons objected to the distribution of William's residual trust assets to only the three Dugan children based on William's 2004 trust agreement.

In March 2005, the Kemptons filed a petition seeking specific performance of William's original trust in which he agreed to pass his residuary trust assets to the Dugan and Kempton children in seven equal shares. The petition asserted William breached his oral agreement with Jane to ensure that the terms of the original trust would be carried out. An amended petition further alleged that William fraudulently induced Jane to leave a portion of her residuary trust to the Dugan children by misrepresenting to her that he would leave a portion of his residuary trust to the Kempton children.

Following a one-day bench trial, the court entered judgment in favor of the Kemptons on the breach of contract and fraud claims. The court granted specific performance on the contract claim, ordering the trustee to distribute William's residuary trust assets to the seven children in equal shares. In light of this relief, the court did not award damages on the fraud claim. The Dugans appeal.

## II. Analysis

The Dugans bring six points on appeal, but we need only address two points that are dispositive. In Point II, the Dugans contend the trial court erred in relying on parol evidence to determine that William's original trust was irrevocable because there was no substantial evidence that the terms of the trust were ambiguous. In Point IV, the Dugans contend the court erred in finding liability on the fraud claim because there was no substantial evidence of William's intent to defraud Jane.

### A. Standard of Review

In this court-tried case, we must affirm the trial court's judgment unless it is un-

supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This appeal involves the interpretation of trust documents and an alleged oral contract, which are questions of law subject to our *de novo* review. *Lehr v. Collier*, 909 S.W.2d 717, 723 (Mo.App. 1995); *Crestwood Shops, L.L.C. v. Hilkene*, 197 S.W.3d 641, 656 (Mo.App.2006). It also challenges the sufficiency of the evidence on a fraud claim, for which we must view the evidence in a light most favorable to the judgment and disregard all contrary evidence. *See Blanke v. Hendrickson*, 944 S.W.2d 943, 944 (Mo.App.1997).

### B. Breach of Contract Claim

At trial, there was no dispute that William and Jane executed *revocable* trusts in November 1989.[1] Despite the terms of the trust documents, the Kemptons argued that William and Jane had a pre-existing oral agreement not to revoke their respective trusts. Mark Kempton testified at trial:

> There was an agreement reached that [William and Jane] would each execute these mutual trusts, that all seven—the three of [William's] children and the four of Jane's children—would share equally in the residuary, and that they would not change those dispositive provisions of the trust. And I remember vividly when that occurred.

The Dugans objected to this testimony as violating the parol evidence rule. The circuit court overruled the objection and ultimately relied on evidence of the oral agreement in determining that William's

---

1. In relevant part, Article XXII of William's original trust stated: "Grantor expressly reserves the right, at any time and from time to time, to alter, amend and revoke this Agree-ment, in whole or in part by duly executed instrument delivered to Trustee." The trust agreement identified William as the grantor and trustee.

original trust agreement was irrevocable and subject to enforcement through specific performance. On appeal, the Dugans contend the court erred in relying on parol evidence to alter the meaning of an unambiguous trust agreement.

■■■ "'In determining the meaning of a trust provision, the paramount rule of construction is that the [grantor's] intent is controlling and such intention must be ascertained primarily from the trust instrument as a whole.'" *In re Living Trust of Johnson*, 190 S.W.3d 469, 475 (Mo.App. 2006) (*quoting First Nat'l Bank of Kansas City v. Hyde*, 363 S.W.2d 647, 652 (Mo. 1962)). Extrinsic evidence concerning a grantor's declarations of his intentions, whether made before, during or after execution of a trust, cannot be considered in construing the trust language. *Boatmen's Union Nat. Bank v. Welton*, 640 S.W.2d 497, 502 (Mo.App.1982). Absent any ambiguity in the terms of the trust, the intent of the grantor must be determined from the "four corners of the instrument without resort to parol evidence as to that intent." *Commerce Bank, N.A. v. Blasdel*, 141 S.W.3d 434, 444 (Mo.App.2004). To admit parol evidence, when there is no ambiguity as to the grantor's intention, would in effect repeal the statute of frauds requiring wills and trusts to be in writing. *Id.*

■■■ The Kemptons have not argued, either at trial or on appeal, that the terms of William's original trust were ambiguous. The trust document clearly permitted William to revoke the original agreement, including provisions that the residual trust assets pass to all of the Kempton and Dugan children in equal shares. Because there was no ambiguity in the original trust, the trial court erred in allowing extrinsic evidence of William and Jane's alleged oral agreement to make their trusts irrevocable.

■■■ It is clear from Mark Kempton's testimony that the oral statements occurred in the context of discussions about the impending trust agreements. The statements did not constitute a separate or collateral agreement, as the Kemptons argue, because William's alleged promises "not [to] change the dispositive provisions of the trust" were directly contrary to the revocation rights spelled out in the trust. Such parol evidence cannot be used to vary or contradict the terms of an unambiguous contract. *Lehr*, 909 S.W.2d at 724. Accordingly, the court also prejudicially erred in relying on evidence of the contemporaneous oral agreement to alter the terms of William's original trust. Based on the plain language of the original trust, the trial court should have determined that William properly exercised his right of revocation by executing a new trust that passed his residual assets only to his three natural children.

Point II is granted. The judgment is reversed on the breach of contract claim.

## C. Fraud Claim

■■■ To prevail on a claim of fraudulent misrepresentation, a plaintiff must prove: (1) a false, material representation; (2) the speaker's knowledge of the falsity or his ignorance of the truth; (3) the speaker's intent that the hearer act upon the representation in a manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on the truth of the representation; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused injury. *Urologic Surgeons, Inc. v. Bullock*, 117 S.W.3d 722, 725–26 (Mo.App.2003). The party alleging fraud bears the burden of proving each element and must satisfy that burden with clear and convincing evidence. *Citizens Bank of Appleton City v. Schapeler*, 869

S.W.2d 120, 127 (Mo.App.1993). Fraud will not be presumed but may be inferred and shown by circumstantial evidence. *Id.*

■ The Dugans contend the trial court erred in entering judgment in favor of the Kemptons because the evidence was insufficient to prove the second element of the fraudulent misrepresentation claim. Specifically, they contend the Kemptons failed to produce any evidence that William knew his statements were false and intended to defraud Jane at the time the original trust agreements were executed.

In Count III of their Second Amended Petition, the Kemptons alleged that William fraudulently induced Jane to execute her trust agreement by misrepresenting to her that he would pass the residuary of his trust assets to all seven children. The petition lists the following facts to support the claim that William knew his statements were false and thereby intended to defraud Jane:

i. That after the death of Jane Dugan said William Dugan wrongfully withheld and disposed of property of the Jane Dugan Trust so as to deprive the plaintiffs of their interest therein, and

ii. That while purporting to possess the jewelry of the Jane Dugan Trust for safe keeping for the trust he failed to maintain possession and control of such property so as to deprive the plaintiffs of their interest therein, and

iii. That William Dugan stated concerning the interest of plaintiff Kathy K. Loveland "I will burn in hell before she gets any of the jewelry" and

iv. That said William Dugan hid from plaintiffs the fact that he made another trust which failed to carry out the aforesaid agreement that the residue pass to all seven children in

equal shares and thereby intentionally acted to deprive the plaintiffs of their interest in the residue as has been agreed upon by their mother and stepfather.

■ As the Dugans point out, none of these facts establish or infer that William made intentionally false statements to Jane at the time they agreed to set-up mutually beneficial trusts. All of the allegations relate to actions or statements that occurred *after* the original trust agreements were executed in 1989. A fraud claim requires proof that the speaker knew the misrepresentation was false at the time it was made. *Hyatt v. Trans World Airlines, Inc.,* 943 S.W.2d 292, 295 (Mo.App. 1997). The mere fact that Williams ultimately revoked his original trust, without more, is insufficient to show that he never intended to pass the residuary trust assets to all seven children.

The Kemptons argue on appeal that William's failure to fully fund his original trust constitutes evidence of his intent to defraud Jane. However, the evidence at trial established that neither Jane nor William made any effort to fund their respective trusts until 1991, nearly two years after the trust agreements were executed. An accountant testified that this delay was due to his efforts to inventory William and Jane's separate assets. Between 1991 and 1996, William and Jane both gradually added assets to their trusts. Although William did not transfer all of his assets, he did transfer several parcels of real estate—including undeveloped lots and a lake cabin—into his original trust several years before Jane died. The trust agreements did not require William and Jane to immediately transfer all assets or fully fund their trusts by a certain date. Consequently, William's failure to promptly and fully fund his trust does not in any

way suggest that he intended to defraud Jane when they executed the trust agreements.

The Kemptons failed to present clear and convincing evidence that William intentionally made a false representation to induce Jane to execute the trust agreement. In light of this deficiency, the evidence is insufficient to support the finding of fraud and the judgment must be reversed.

CONCLUSION

The judgment is hereby reversed on the breach of contract and fraud claims. Pursuant to Rule 84.14, judgment is entered in favor of the Dugans on both claims.

All concur.