

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

MAJOR HAMMETT, II,      )
                                        )   WD75551 and
           Appellant-Respondent,  )   WD75586
  v.                            )
                                          )   OPINION FILED:
MICHAEL D. ATCHESON;     )
MICHAEL D. ATCHESON,      )   August 12, 2014
TRUSTEE OF THE MICHAEL    )
DEAN ATCHESON TRUST,     )
                                          )
          Respondent-Appellant.   )

Appeal from the Circuit Court of Jackson County, Missouri
Honorable Michael W. Manners, Judge

Before Division Three:  Gary D. Witt, P.J.,
Joseph M. Ellis, and Thomas H. Newton, JJ.

Mr. Major Hammett, II, appeals the denial of the motion to amend the judgment for an award of attorney fees.  Mr. Michael D. Atcheson, as an individual and a trustee of the Michael D. Atcheson Trust (Atcheson Parties), cross-appeals the denial of the motions for a directed verdict and judgment notwithstanding the verdict.  We affirm in part, reverse in part, and remand for a new trial solely on the issue of damages.

## Factual and Procedural History

The following facts were adduced at trial. In 2005, Mr. Hammett began working with the City of Bolivar and the Tax Increment Financing Commission (TIF Commission) on a real estate development and investment opportunity known as the Simon Square Development Project (Simon Square). Mr. Hammett then entered into a "50-50 partnership" on the project with Mr. Atcheson, a prominent local developer.

In February 2006, Simon Square was organized as "Simon Square Development, LLC," with Messrs. Hammett and Atcheson as the organizers. On the day Simon Square was organized, Mr. Hammett and Mr. Atcheson (as trustee of the Atcheson Trust) also executed an Operating Agreement, which listed them each as members with a 50% ownership interest. Mr. Hammett and the Atcheson Trust were to vote equally in all Simon Square matters. The development project, which included space allocations for retail and office space, lodging, and single-family residences, was estimated to cost more than $89 million to complete.

Mr. Hammett testified that, later in 2006, Mr. Atcheson advised him that another partner would need to be added for access to additional funding. Mr. Atcheson recommended adding his business partner, Mr. Larry Haas, to the partnership. Mr. Haas was added, and the trio entered into a Restated Operating Agreement (ROA), wherein Messrs. Hammett and Haas and the Atcheson Trust were listed as equal members with a one-third ownership

interest. Mr. Hammett testified that he was not provided an advance copy of the ROA before the meeting to sign it. He testified that, except for the addition of Mr. Haas, he did not know the terms of the agreement had changed.

Under the ROA, Mr. Atcheson was designated Simon Square's "first Manager," which granted him "full and complete authority, power[,] and discretion to manage and control the business." Mr. Haas was designated the company's "Tax Matters Member," thereby serving as its accountant, tax preparer, Secretary, and Treasurer. Additionally, the ROA included a provision that permitted members to contribute additional capital "deemed necessary for the operation of the company," and, for members who did not provide additional capital in proportion, their ownership interest would be diluted.[1] The three men also executed a Buy-Sell Agreement, which, among other terms, required thirty days' written notice to all members before company shares could be transferred.

In 2008, Mr. Haas transferred his shares to the Atcheson Trust without providing the requisite notice to Mr. Hammett. The Atcheson Trust then held a majority interest in Simon Square. As First Manager of Simon Square and trustee of the Atcheson Trust, Mr. Atcheson purportedly began to wield his authority for personal benefit. According to Mr. Hammett, Mr. Atcheson's

---

[1] In the original Operating Agreement, capital could only be contributed with approval from the executive committee, which was comprised solely of Messrs. Hammett and Atcheson. Mr. Hammett testified that his company, Major Saver, was $2.2 million in debt at the time that he entered into the Simon Square partnership with Mr. Atcheson, and that the dilution of ownership provision in the ROA was created as an attempt to remove him from the partnership due to Mr. Atcheson's knowledge of his inability to provide additional capital.

actions included: paying himself a developer fee of $500,000 against Mr. Hammett's objection; using his own construction, landscaping, and realty companies for company business and paying them in excess of fair market value for services rendered; paying Mr. Atcheson's personal legal fees; and making political campaign contributions.

Mr. Hammett filed suit against the Atcheson Parties,[2] asserting five claims. First, he sued Mr. Atcheson as a trustee for breach of the Buy-Sell Agreement. Second, he asserted a claim against Mr. Atcheson as an individual for breach of the Restated Operating Agreeement. Third, he asserted a claim against Mr. Atcheson as an individual for breach of fiduciary duty. Fourth, he asserted a claim against Mr. Atcheson as an individual for fraud. Lastly, Mr. Hammett sued Mr. Atcheson as a trustee for fraud.

A jury trial was held in 2012. The jury unanimously found in favor of Mr. Hammett on all five counts and assessed damages of $280,650. The damages were not apportioned to each count, but instead comprised a general award. The jury found that the Atcheson Parties were not liable for punitive damages. In the judgment, the trial court assessed damages and costs to the Atcheson Parties, but did not award attorney fees.

Mr. Hammett filed a post-trial motion to amend the judgment to include attorney fees, court costs, and restoration of himself as a 50% owner of Simon

---

[2] In the petition, Mr. Hammett also filed suit against Mr. Haas, along with attorneys who represented Mr. Atcheson and Simon Square. Mr. Haas and other parties settled and were dismissed from the suit. The settlement amounts do not appear in the record.

4

Square.  He requested that the award be increased to $574,837.41 to include attorney fees totaling $293,895.41.[3]  The Atcheson Parties filed post-trial motions for JNOV and a new trial.  The trial court allowed ninety days to lapse without ruling on the motions, and they are deemed denied.[4]  Mr. Hammett appeals, and the Atcheson Parties cross-appeal.

## Standard of Review

Issues of contractual interpretation are reviewed *de novo*.  *Brown v. Brown-Thill*, No. WD76778, 2014 WL 1677849, at *3 (Mo. App. W.D. April 29, 2014)  (internal quotation marks and citation omitted).  "The standard for reviewing a denied motion for JNOV is essentially the same as for reviewing the denial of a motion for directed verdict."  *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 204 (Mo. App. W.D. 2013) (internal quotation marks and citation omitted).  "[G]ranting a motion for JNOV is a drastic action and should only be granted when reasonable persons could not differ on the correct disposition of the case."  *Id.*  To be submissible, there must be "legal and substantial evidence [that] supports each fact essential to liability."  *Id.* Whether a case is submissible is a question of law that we review *de novo*.  *Id.*

---

[3] When adding the damage award and Mr. Hammett's reported attorney fees, the total equals $574,545.41, a difference of $292 less than Mr. Hammett requests.  In addition to attorney fees, he claims to have paid court costs of $3,547.12 (a $292 filing fee, plus $3,255.12 in deposition costs) and $7,400 in expert witness fees.  Presumably, the difference of $292 reflects the filing fee.

[4] Pursuant to Rule 81.05(a)(2)(A), "If a party timely files an authorized after-trial motion, the judgment becomes final . . . [n]inety days from the date the last timely motion was filed, on which date all motions not ruled [sic] shall be deemed overruled."  The last timely motion was filed by the Atcheson Parties on May 14, 2012.  Mr. Hammett filed a motion on May 11, 2012.  Therefore, all motions were deemed denied on August 13, 2012.

In our determination of whether evidence sufficiently supports the jury's verdict, we view it "in the light most favorable to the verdict and the plaintiff is given the benefit of all reasonable inferences." *Id.*

Whether a jury was instructed properly is a question of law that we review *de novo*. *Kopp v. Home Furnishing Ctr., LLC*, 210 S.W.3d 319, 328 (Mo. App. W.D. 2006). We are "only obliged to determine whether there was evidence from which such verdict could have been reached by a jury composed of reasonable men and women." *Envtl. Energy Partners, Inc. v. Siemens Bldg. Technologies, Inc.*, 178 S.W.3d 691, 698 (Mo. App. S.D. 2005) (internal citations omitted). We "will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative facts to support the jury's conclusion." *Peel*, 408 S.W.3d at 204.

**Legal Analysis**

*The Atchesons Parties' Cross-Appeal*

We will address the Atcheson Parties' cross-appeal first because it is dispositive. The Atcheson Parties raise six points. In the first point, they argue that the trial court erred in denying the motions for a directed verdict and JNOV. They assert: (1) the Buy-Sell Agreement, under Section 1.4, permitted Mr. Haas to transfer his units to the Atcheson Trust without Mr. Hammett's consent; (2) any duty claimed under the agreement to provide notice was attributable to Mr. Haas as the seller and not to the Atcheson Trust as the buyer; and (3) Mr. Hammett submitted a fraud claim in 2006, in which he requested to

6

be restored to his previous position as a 50% owner of Simon Square, which would invalidate the agreement. They further contend that Mr. Hammett cannot claim that the agreement is void and later assert rights to benefits contained therein.

When interpreting contracts, the primary rule "is to ascertain the parties' intent and give effect to that intent." *Exec. Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr.*, 280 S.W.3d 678, 687 (Mo. App. W.D. 2009) (internal quotation marks and citation omitted). To ascertain this intent, we look to "the plain and ordinary meaning of the words in the contract and consider the document as a whole." *Id.* (internal quotation marks and citation omitted). Section 1.4 of the Buy-Sell Agreement states, in relevant part:

> **1.4 Permitted Transferees.** Notwithstanding the restrictions on transfer contained in this Agreement, a Member shall have the right, during lifetime or at death, without obtaining the consent of the other Members, to sell, assign or transfer his Units to the following persons or entities ("Permitted Transferee"):
>
> a. any other member

However, section 5.1 of the Buy-Sell Agreement states, in relevant part:

> **5.1 Notice of Withdrawal.** Any Member . . . desiring to sell, assign or otherwise transfer any or all of his Company Units . . . shall, at least (30) days prior to the date he desires to transfer his Units, provide written notice . . . to the Company and the other Members of his desire to sell such Units.

Based on the plain and ordinary meaning of these sections of the Buy-Sell Agreement, it is clear that the agreement permits intra-member unit transfers without consent, but it requires a 30-day written notice beforehand *by*

7

*the transferor*.  Section 5.1 is silent as to the notice requirements of transferees. Thus, the transfer of units *by Mr. Haas* to the Atcheson Trust without first providing a 30-day written notice to Mr. Hammett was a violation of the Buy-Sell Agreement *by Mr. Haas*.  Mr. Hammett's request to be restored as a 50% owner of Simon Square is immaterial to the validity of the existing Buy-Sell Agreement or the ROA.  The first point is granted.

In the second point, the Atcheson Parties argue that the trial court erred in denying the motions for a directed verdict and JNOV, in that the court submitted Mr. Hammett's 2006 and 2008 fraud claims to the jury when Mr. Hammett "failed to submit any evidence that [Mr.] Atcheson's statements in July 2006 were false."  Specifically, the Atcheson Parties challenge jury instructions 11 and 12, which pertain to the 2006 and 2008 fraud claims, respectively.  They contend that Mr. Hammett failed to establish the existence of fraud because "each element was not supported by substantial evidence," and Mr. Hammett "cannot rely on statements directly contradicted by the written agreement."  Jury Instructions 11 and 12 read as follows:

**Jury Instruction 11**

On his claim for fraud, your verdict must be for Plaintiff against Defendant, Michael D. Atcheson, if you believe:

First, Defendant, Michael D. Atcheson, represented that Simon Square Development, LLC, needed to add Larry Haas as a member for Larry Haas' financial resources, and

8

Second, such representation was made by Defendant, Michael D. Atcheson, with the intent that Plaintiff rely on such representation in agreeing to add Larry Haas as a member, and

Third, the representation was false, and

Fourth, Defendant, Michael D. Atcheson, knew it was false, and

Fifth, the representation was material to Plaintiff's agreement to adding Larry Haas as a member of Simon Square Develoment, LLC, and

Sixth, Plaintiff relied on the representation in agreeing to adding Larry Haas as a member of Simon Square Development, LLC, and

Seventh, as a direct result of such representation, Plaintiff sustained damage.

## Jury Instruction 12

On his claim for fraud, your verdict must be for Plaintiff against Defendant, Michael D. Atcheson, Trustee, if you believe:

First, Defendant, Michael D. Atcheson, Trustee, represented to Plaintiff that he paid a significant amount for the shares from Larry Haas, and

Second, such representation was made by Defendant, Michael D. Atcheson, Trustee, with the intent that Plaintiff rely on such representation in allowing Defendant, Michael D. Atcheson, Trustee, to purchase Larry Haas' interest in Simon Square Development, LLC, and

Third, the representation was false, and

Fourth, Defendant, Michael D. Atcheson, Trustee, knew it was false, and

Fifth, the representation was material to Plaintiff's agreement to allow Defendant, Michael D. Atcheson, Trustee, to

9

purchase Larry Haas' interest in Simon Square Development, LLC, and

Sixth, Plaintiff relied on the representation in allowing Defendant, Michael D. Atcheson, Trustee, to purchase Larry Haas' interest in Simon Square Development, LLC, and

Seventh, as a direct result of such representation, Plaintiff sustained damage.

In order to establish fraudulent misrepresentation, Mr. Hammett would need to prove the following:

(1) a false, material representation; (2) [Mr. Atcheson]'s knowledge of the falsity or his ignorance of the truth; (3) [Mr. Atcheson]'s intent that [Mr. Hammett] act upon the representation in a manner reasonably contemplated; (4) [Mr. Hammett]'s ignorance of the falsity of the representation; (5) [Mr. Hammett]'s reliance on the truth of the representation; (6) [Mr. Hammett]'s right to rely thereon; and (7) [Mr. Hammett]'s consequent and proximately caused injury.

*See Kempton v. Dugan*, 224 S.W.3d 83, 87 (Mo. App. W.D. 2007). "The party alleging the fraud bears the burden of proving each element and must statisfy that burden with clear and convincing evidence." *Id.* at 87. A claim of fraud "requires proof that the speaker knew the misrepresentation was false at the time it was made." *Id.* at 88. Finally, "[d]irect evidence of fraud rarely exists, but fraud, like any other fact, may be established by circumstantial evidence." *Peel*, 408 S.W.3d at 210 (internal quotation marks and citation omitted). The jury could freely "believe or disbelieve [such] evidence." *Id.*

Here, Mr. Hammett testified that Mr. Atcheson advised him that Mr. Haas would need to be added to the Simon Square partnership for access to

10

additional capital, but Mr. Atcheson failed to advise Mr. Hammett that the terms of the ROA would differ from the original Operating Agreement, nor did he provide Mr. Hammett an advance copy of the ROA so that he could review it before meeting to sign it. As Mr. Atcheson's partner, Mr. Hammett was justified in relying on Mr. Atcheson's statements, and did so to his detriment. Accordingly, Mr. Hammett has established the elements of fraud, and the trial court did not err in submitting the 2006 and 2008 fraud claims to the jury. Point two is denied.

We address points three and four together because they contain related arguments. In the third point, the Atcheson Parties argue that the trial court erred in denying the motions for a directed verdict and JNOV because the trial court submitted to the jury Mr. Hammett's claim for breach of the ROA, and such a claim for breach "is barred by the agreement [Mr.] Hammett seeks to enforce[,] and [Mr.] Hammett cannot claim the restructure is invalid and then sue for benefit of the bargain." In the fourth point, the Atcheson Parties argue that the trial court erred in denying the motions for a directed verdict and JNOV because, when the court submitted to the jury Mr. Hammett's claims of breach of the Buy-Sell Agreement, breach of the ROA, breach of fiduciary duty, and fraud, it wrongfully did so because Mr. Hammett "failed to establish the causal link between any of the alleged acts of the Atcheson Parties and the claimed damages and failed to present substantial competent evidence of damages." The Atcheson Parties argue that the ROA was binding on the

11

Atcheson Trust, but not on Mr. Atcheson as an individual, because Mr. Atcheson was not a signatory. They assert that "[n]o reasonable juror could find that Atcheson Individually either signed the Restated Operating Agreement as Manager or that Atcheson Individually was a party to the Restated Operating Agreement."

Limited liability companies are ordinarily considered separate legal entities that are distinct from their members or owners. *Hibbs v. Berger*, 430 S.W.3d 296, 306 (Mo. App. E.D. 2014) (internal citation omitted). Members are generally not liable for the entity's debts. *Id.* However, "this protection (also known as 'limited liability') . . . that members of an LLC possess is not absolute." *Id.* "Where a corporation [or an LLC] is used for an improper purpose and to perpetuate injustice by which it avoids its legal obligations, equity will step in, pierce the corporate veil and grant appropriate relief." *Id.* (citing *Irwin v. Bertelsmeyer*, 730 S.W.2d 302, 304 (Mo. App. E.D. 1987)). For a court to disregard the business entity or pierce the corporate veil, a Plaintiff must demonstrate the following three-pronged test:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time ***no separate mind, will or existence of its own***; and

> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

12

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id.* (internal quotation marks and citation omitted) (emphasis added). To determine the existence of a fiduciary relationship, "the ultimate question is whether or not trust is reposed with respect to [the] property or business affairs of the other." *Id.* at 313. (internal quotation marks and citation omitted).

Here, although Mr. Atcheson did not sign the ROA as an individual, he represented the Atcheson Trust's membership in Simon Square as a trustee and as Simon Square's First Manager. In the latter capacity, he was given sole and absolute control of business practices, such that his actions were inseparable from those that were attributable to Simon Square or the Atcheson Trust. Evidence was presented at trial to establish that Mr. Atcheson used this complete control to commit fraudulent and wrongful acts, including: paying himself a developer fee of $500,000 against Mr. Hammett's objection; using his own construction, landscaping, and realty companies for company business and paying them in excess of fair market value for services rendered; paying Mr. Atcheson's personal legal fees; and making political campaign contributions. This improper use of company resources resulted in an unjust loss to Mr. Hammett, thereby supporting a finding that Mr. Atcheson breached the agreement and his fiduciary duties to Simon Square and Mr. Hammett as a member of the LLC. Therefore, points three and four are denied.

13

In the fifth point, the Atcheson Parties raise several subpoints to support their argument that the trial court erred in failing to grant a new trial. They first argue that they are "entitled" to a new trial because of the trial court's alleged "plain error" in failing to require the jury "to find that [Mr.] Hammett *reasonably* relied on the alleged fraudulent representations." (Emphasis added). They contend that the trial court "submitted multiple theories of liability to the jury under one verdict form such that the defect in even one of the theories . . . requires a new trial on all matters." Second, they argue that a new trial is warranted "because the verdict fails to apportion damages among [Mr.] Hammett's claims." Third, they contend that the trial court's "instruction for the breach of the Buy-Sell Agreement was erroneous because the evidence at trial showed the parties had a dispute over [its] terms." They assert that Mr. Hammett "failed to establish that any alleged fraud or breach actually caused the damages claimed . . . and the jury was thereby given a roving commission to find damages that were not causally related to the claimed fraud or breach." Further, they argue that "the verdict director for breach of fiduciary duty imposed additional duties not recognized by Missouri law." Finally, they argue that the resulting damages are "against the weight of the evidence on each of [Mr.] Hammett's claims."

"Plain error review is a two-step analysis." *State v. Scott*, 278 S.W.3d 208, 212 (Mo. App. W.D. 2009) (internal quotation marks and citation omitted).

14

We first "determine whether or not the error is plain, and second, we determine whether or not manifest injustice or miscarriage of justice would result if the error is left uncorrected." *Id.* Plain error is defined as "that which is evident, obvious, and affects substantial rights of the defendant." *Id.* (internal quotation marks and citation omitted). "Instructional error rarely rises to the level of plain error." *Id.* To prove the existence of plain error within an instructional error context, "[the Atcheson Parties] must show more than mere prejudice and must show that the [trial] court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict and caused manifest injustice or miscarriage of justice." *See id.* (internal quotation marks and citation omitted).

Jury instructions are governed by Rule 70.02. *Peel*, 408 S.W.3d at 200. Non-MAI instructions "must be simple, brief, and free from argument." *Id.* (quoting Rule 70.02). "An instruction results in a roving commission when it assumes a disputed fact or posits an abstract legal question that allows the jury to roam freely through the evidence and choose any facts that suited its fancy or its perception of logic to impose liability." *Scott,* 278 S.W.3d at 214 (internal quotation marks and citation omitted).

Here, jury instructions 11 and 12 each include the word, "relied," in part six, but the term is not preceded by the adjective, "reasonable." In reviewing instructional errors in which an essential element was allegedly omitted, the absence of a particular word does not automatically imply or signal the

15

existence of prejudicial error. *See Peel*, 408 S.W.3d at 200. The meaning of the word, "relied," is suffiently clear without "reasonable" preceding it. As business partners, it was reasonable for Mr. Hammett and the Atcheson Parties to rely on the validity of statements made about their shared business interests. In a sense, adding "reasonable" to these instructions would have been superfluous. Thus, the Atcheson Parties' argument "is more semantics than substance." *Id.* (internal quotation marks and citation omitted). Furthermore, nothing in either instruction invited the jury to roam freely in search of the Atcheson Parties' culpability, nor did these instructions improperly impose fiduciary duties that extend beyond the scope of Missouri law. Mr. Hammett established the existence of fraud with substantial evidence, and the jury was "free to believe or disbelieve" the evidence presented. *Peel*, 408 S.W.3d at 210.

As for the Atcheson Parties' challenge to the appropriateness of the resulting award, "[a] simple claim that the jury's verdict was excessive does not entitle a movant to a new trial." *Mansfield v. Horner*, No. WD 76310, 2014 WL 2724854, at *8 (Mo. App. W.D. June 17, 2014) (internal citation omitted). A defendant "must demonstrate that the verdict was the product of bias and prejudice" to warrant a new trial on this basis. *Id.* To meet this burden, a defendant must establish that "the verdict was glaringly unwarranted by the evidence and that some trial error or misconduct by the prevailing party was responsible for prejudicing the jury against the defendant." *Id.* (internal

16

quotation marks and citation omitted). Jury verdicts are considered excessive when the award "exceeds fair and reasonable compensation for [the] plaintiff's damages." *Id.* (internal quotation marks and citation omitted). Nothing in the facts indicates that the jury's verdict was "glaringly unwarranted," nor does it appear to be excessive or the product of bias.

With respect to apportionment, the Atcheson Parties claim that a new trial is warranted because one of the theories submitted to the jury—that notice of the intra-member unit transfer was required of the Atcheson Trust—was defective. The Atcheson Parties claim that, without apportionment, there is no way to determine what portion should be attributed to the defective claim, thereby necessitating a new trial.

Trial courts are not compelled to apportion damages in all circumstances. Damages and their apportionment are issues for a jury to determine. *See Mo. Pub. Entity Risk Mgmt. Fund v. Am. Cas. Co. of Reading*, 399 S.W.3d 68, 81 (Mo. App. W.D. 2013). However, in instances where an unapportioned award stems from multiple theories submitted to the jury, with one theory later found to have been defective, we cannot speculate as to how damages should be divided among the remaining valid claims, nor can we presume that a general damage award applies to each claim. "Just because a jury returns a verdict for the plaintiff does not mean it gave the plaintiff *all* of the types of damages he or she requested." *Mickey v. BNSF Ry. Co.*, No. SC 93591, 2014 WL 3107443, at *9 (Mo. banc 2014) (emphasis added). For this reason, the granting of a new

17

trial is warranted.  Accordingly, we grant point five, but only with respect to a determination of damages.

Finally, in the sixth point, the Atcheson Parties argue that the trial court erred in failing to amend the judgment "to reflect an offset for monies paid to [Mr.] Hammett by settling defendants."  They contend that, in denying the motion, the trial court "acted arbitrarily and unreasonably" because it permitted them to amend their defense of offset to include an offset for settlement payments that Mr. Hammett received before the trial began, yet the court "failed to hold an evidentiary hearing to determine the amount of the settlement payments and credit the judgment" accordingly.  They further claim that the trial court's failure to credit these settlement payments resulted in a "windfall" to Mr. Hammett.

A party may be made whole by one compensatory damage award for multiple theories of liability, but a double recovery for the same wrongs is deemed an impermissible windfall.  *R.J.S. Sec., Inc. v. Command Sec. Servs., Inc.*, 101 S.W.3d 1, 17 (Mo. App. W.D. 2003).  "To prove a double recovery, a defendant must prove an overlap between: (1) the injuries or damages for which a plaintiff has received compensation; and (2) the injuries or damages that are the subject of a plaintiff's claim against the defendant."  *Moore Automotive Group, Inc. v. Lewis*, 362 S.W.3d 462, 468 (Mo. App. E.D. 2012).  Because we have granted point five, requiring a new trial on the issue of damages only, and because the subject matter of this point on appeal is

18

inextricably interwoven with the issue of damages, point six is denied without prejudice to the Atcheson Parties' ability to attempt to establish a right to offset on remand.

*Mr. Hammett's Appeal*

Mr. Hammett raises one point. He argues that the trial court erred in failing to amend the judgment to include attorney fees and costs, in that there was "no rational basis" for failing to grant the motion because the Buy-Sell Agreement allowed for recovery of reasonable attorney fees and court costs by the prevailing party of any action instituted to enforce any rights under the agreement.

Missouri courts generally follow "the American Rule that each party bears the burden of their own attorney's fees." *Wally & Co., L.C. v. Briarcliff Dev. Co.*, 371 S.W.3d 880, 885 n.4 (Mo. App. W.D. 2012) (internal citation omitted). One exception is where a statute specifically authorizes the awarding of attorney fees to the prevailing party. *Id*. Another is where there is a contractual agreement. *Mayor, Councilmen, and Citizens of City of Liberty v. Beard*, 636 S.W.2d 330, 331 (Mo. banc 1982) (internal citations omitted). "Recovery of attorney fees pursuant to a contractual provision is only available to the prevailing party." *Rental Co., LLC v. Carter Group, Inc.*, 399 S.W.3d 63, 67 (Mo. App. W.D. 2013). "The prevailing party is the party that obtains a judgment from the court, regardless of the amount of damages." *Id.* (internal quotation marks and citation omitted). Only "some relief from the court" is

19

required to be considered the prevailing party. *Id.* (internal quotation marks and citation omitted).

Because we have granted the Atcheson Parties relief that requires this matter to be remanded for a new trial on the issue of damages only, Mr. Hammett's appeal is denied without prejudice to his ability to attempt to establish a right to the recovery of attorney fees on remand.

## Conclusion

For the above reasons, the judgment insofar as it determines liability is affirmed on all claims, except the breach of the Buy-Sell Agreement claim, which is reversed. We reverse the jury's general damages award, and remand the case for a new trial solely on the issue of damages as to those claims for which liability has been affirmed. The parties and the trial court are free on remand to revisit the issues of offset and attorney fees.

/s/ THOMAS H. NEWTON
Thomas H. Newton, Judge

Witt, P.J., and Ellis, J. concur.