

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| RITA LYNNE TERPSTRA, | ) | |
| | ) | |
| Respondent, | ) | WD80967 |
| | ) | |
| v. | ) | OPINION FILED:  January 2, 2019 |
| | ) | |
| STATE OF MISSOURI, | ) | |
| DEPARTMENT OF LABOR AND | ) | |
| INDUSTRIAL RELATIONS | ) | |
| COMMISSION, ET AL., | ) | |
| | ) | |
| Appellants. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Daniel R. Green, Judge

Before Division Three:  Gary D. Witt, Presiding Judge, Cynthia L. Martin, Judge and
Anthony Rex Gabbert, Judge

The Missouri Department of Labor and Industrial Relations Commission ("LIRC"),

the Missouri Department of Employment Security ("DES"), and Robert Lambert

("Lambert") (collectively "Defendants") appeal from the trial court's judgment in an age

discrimination action which awarded actual damages, punitive damages, attorneys' fees,

and costs to Rita Lynne Terpstra ("Terpstra").  The Defendants allege multiple errors

occurred at trial involving questioning of the venire panel about issues of law, the

admission of irrelevant evidence, the submission of punitive damages, the amount awarded in punitive damages, and the amount awarded for attorneys' fees. Finding no error, we affirm.

## Factual and Procedural Background[1]

In January 2012, Terpstra filed suit against the Defendants. After years of discovery, Terpstra was granted leave to file an amended petition in March 2016. The amended petition alleged in Count One that the Defendants engaged in age discrimination in violation of the Missouri Human Rights Act ("MHRA"), section 213.010 *et seq.*,[2] by failing to promote Terpstra, age 55, to the position of senior claims supervisor at the Jefferson City Regional Claims Center ("JCRCC") in August 2010 when two openings existed.[3] The amended petition alleged in Count Two that the Defendants retaliated against Terpstra in violation of the MHRA by prematurely terminating her temporary position as senior claims supervisor in March 2011 after Terpstra filed age discrimination complaints with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC").

Terpstra's claims were tried to a jury beginning in November 2016. Terpstra presented evidence that she was denied two promotions to senior claims supervisor in 2010, and that the Defendants promoted two younger, less qualified persons to the positions.

---

[1]We view the facts in the light most favorable to the jury's verdict. *Beverly v. Hudak*, 545 S.W.3d 864, 868 n.1 (Mo. App. W.D. 2018).

[2]All statutory citations are to RSMo 2000 as supplemented through August 2010, when Terpstra's claims arose, unless otherwise noted.

[3]The first count also named Patricia Wise and John Short as defendants. Short was dismissed from the suit on November 7, 2016, and Wise was dismissed from the suit on January 20, 2017.

Terpstra presented testimony from other employees, over the Defendants' objection, suggesting that the Defendants engaged in a scheme of promoting younger, less qualified applicants over older, more qualified applicants. Terpstra also presented evidence that three employees who had been promoted to senior claims supervisor were later demoted due to inappropriate email use.

The jury found in favor of Terpstra on Count One, and awarded her $20,000 in actual damages against DES and Lambert; $260,000 in punitive damages against DES; and $20,000 in punitive damages against Lambert. The jury found in favor of the Defendants on Count Two.

Terpstra filed a motion asking the trial court to award reasonable attorneys' fees, costs, and post-judgment interest ("Terpstra's Motion for Attorneys' Fees and Costs"). Terpstra's Motion for Attorneys' Fees and Costs sought an award of attorneys' fees in the amount of $1,175,248.90; costs and expenses in the amount of $27,200.26; and post-judgment interest at 5.5 percent on the total judgment. Terpstra later amended her request for costs and expenses to $15,000. Terpstra also filed a motion asking the trial court to conform the judgment and to enter judgment against the LIRC on Count One ("Terpstra's Motion to Conform the Judgment"). Terpstra's Motion to Conform the Judgment asserted that, because Lambert is an employee of the LIRC, and because DES is a division of the LIRC, the LIRC was legally responsible for the acts of age discrimination attributed by the jury to DES and Lambert on Count One.

On May 5, 2017, the trial court issued its judgment ("Judgment") in conformance with the jury's verdicts, and ruling Terpstra's motions. The Judgment found that the jury's

3

finding in favor of Terpstra and against Lambert and DES on Count One, the age discrimination claim, also bound the LIRC. Thus, the Judgment awarded Terpstra actual damages in the amount of $20,000 from the LIRC, DES, and Lambert. The Judgment awarded Terpstra punitive damages in the amount of $20,000 from Lambert, and in the amount of $260,000 from DES, as set forth in the jury's verdicts. The Judgment awarded Terpstra $731,562.30 in reasonable attorneys' fees and $15,000 in costs and expenses, from the LIRC, DES, and Lambert. Finally, the Judgment awarded post-judgment interest at 5.75 percent on all amounts awarded to Terpstra.

Following the entry of Judgment, Defendants DES and Lambert filed a motion titled "Defendants' Motions and Suggestions in Support of Judgment Notwithstanding the Verdict or, in the Alternative for a New Trial, or in the Alternative for an Elimination and/or Reduction in Fee Awards" ("Post-Trial Motion").[4] The Post-Trial Motion argued that entry of judgment notwithstanding the verdict or a new trial was required because the trial court erred in admitting testimony from "me-too" witnesses about discriminatory statements, actions, or conduct unrelated to the instant action; because Terpstra improperly instructed the venire panel on the law during voir dire; because the trial court erroneously admitted emails which led to the demotion of three employees that were not relevant; and because the trial court's award of attorneys' fees was based on a misapplication of the law.[5]

---

[4]The Post-Trial Motion expressly states in the first paragraph that it is being filed on behalf of DES and Lambert, which the Post-Trial Motion defines as "Defendants." We question, therefore, whether the LIRC can be fairly said to be a party to the Post-Trial Motion. Because we otherwise find in favor of Terpstra, we need not further address this issue.

[5]The Post-Trial Motion also argued that entry of judgment notwithstanding the verdict or a new trial was required because the trial court allowed the report written by Terpstra's expert into evidence. None of the Defendants' points on appeal address this alleged claim of error.

4

The Post-Trial Motion alternatively argued that, because the trial court's award of attorneys' fees was based on a misapplication of law, the trial court should eliminate or reduce the attorneys' fees award. Following a hearing, the trial court denied the Post-Trial Motion.

The Defendants appeal. Additional facts will be discussed where relevant to the Defendants' points on appeal.

## Analysis

The Defendants assert six points on appeal alleging error during voir dire, in the admission of evidence, in the submission and award of punitive damages, and in the award of attorneys' fees. We address each point separately.

### Point One: Terpstra's Discussion of the Law During Voir Dire

The Defendants' first point on appeal argues that the trial court erred "in permitting Terpstra's counsel to improperly instruct the venire panel on the law during voir dire because it was not relevant to identifying whether the potential jurors harbored any bias or prejudice against either party in that counsel could have determined the same information without invading the province of the court." [Appellants' Brief, p. 25]

The purpose of voir dire "'is to determine which persons harbor bias or prejudice against either party which would make them unfit to serve as jurors.'" *Dieser v. St. Anthony's Med. Ctr.*, 498 S.W.3d 419, 436 (Mo. banc 2016) (quoting *State v. Nicklasson*, 967 S.W.2d 596, 608 (Mo. banc 1998)). "Counsel is afforded wide latitude in questioning 'the venire panel to determine preconceived prejudices which would prevent them from following the court's instructions.'" *Id.* (quoting *Nicklasson*, 967 S.W.2d at 608). As such, "'the trial [court] is vested with the discretion to judge the appropriateness of specific

5

questions, and is generally vested with wide discretion in the conduct of voir dire.'" *Adkins v. Hontz*, 337 S.W.3d 711, 716 (quoting *State v. Baumruk*, 280 S.W.3d 600, 614 (Mo. banc 2009)). We will not reverse a ruling made by the trial court during voir dire unless it "clearly and manifestly indicate[s] an abuse of such discretion." *Id.* at 718. "The trial court abuses its discretion when a ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* at 716. An abuse of discretion alone will not support reversal. The party claiming error thus has "'the [additional] burden of showing a real probability that [they were] thereby prejudiced.'" *Dieser*, 498 S.W.3d 436 (quoting *Nicklasson*, 967 S.W.2d at 608).

"'Counsel may not tell prospective jurors what law will be applied in the case or what instructions will be given to them.'" *State v. Brown*, 902 S.W.2d 278, 286 (Mo. banc 1995) (quoting *State v. White*, 722 S.W.2d 92, 94 (Mo. App. E.D. 1986)). Here, the Defendants contend that the trial court abused its discretion during voir dire on three occasions when it permitted Terpstra's counsel to violate this principle. We disagree.

First, the Defendants complain that Terpstra's counsel was permitted, over the Defendants' objection, to ask whether members of the venire panel believed a person was required to file an internal grievance before filing suit for discrimination. After the Defendants' objection was overruled, Terpstra's counsel briefly explained the process for filing a complaint with the MCHR. The next morning, the Defendants moved for a mistrial. The trial court denied the Defendants' motion for a mistrial noting that "a short explanation of the law, just to clarify the jurors' bias, is appropriate."

6

On appeal, the Defendants do not claim error in the denial of their motion for a mistrial. Instead, they argue that the trial court abused its discretion in permitting Terpstra to discuss the procedure for filing a discrimination lawsuit. This claim of error is not preserved for appellate review. The Post-Trial Motion did not address this aspect of voir dire. The Post-Trial Motion's discussion of voir dire was limited to the contention that Terpstra was erroneously permitted to discuss "the definition of discrimination and the burden of proof," and in so doing, made incorrect statements about the law. [Doc. 94, p. 2] "Rule 78.07(a) requires *all* allegations of error . . . 'to be included in a motion for new trial in order to be preserved for appellate review.'" *Goudeaux v. Bd. of Police Comm'rs of Kansas City*, 409 S.W.3d 508, 514 (Mo. App. W.D. 2013) (quoting Rule 78.07(a)). We will not address a claim of error on appeal that has not been raised in a timely filed post-trial motion. *Id.* (noting that the failure to include a claim of error in a motion for new trial preserves nothing for appellate review).

Next, the Defendants complain that Terpstra's counsel was permitted to instruct the venire panel about the law regarding whether and how employers can take age into account when making hiring decisions. The record does not support this assertion. When Terpstra's counsel was addressing whether the venire panel believed an employer could consider age when making hiring decisions, the Defendants objected that Terpstra was asking the venire panel to opine on the ultimate issue to be determined by the jury. The trial court effectively *sustained* this objection, as it directed Terpstra to rephrase her voir dire questions as to avoid seeking a commitment from the venire panel. The Defendants do not explain how a sustained objection can support a finding of an abuse of discretion, even presuming,

7

*arguendo*, that Terpstra's inquiry of the venire panel could be considered instruction on the law. In any event, the objection the Defendants' made at trial was not that Terpstra was instructing the venire panel on the law. "A 'point on appeal must be based upon the theory voiced in the objection at trial and an appellant cannot expand or change on appeal the objection as made.'" *Kline v. City of Kansas City*, 334 S.W.3d 632, 647 (Mo. App. W.D. 2011) (quoting *Carroll v. Kelsey*, 234 S.W.3d 559, 563 (Mo. App. W.D. 2007)).

After the Defendants' objection was sustained, Terpstra's voir dire continued. The Defendants again objected, and this time asserted not only that Terpstra was seeking a commitment from the venire panel on an ultimate issue, but also that Terpstra was instructing the venire panel on the law. The Defendants also moved for a mistrial. The trial court denied the request for a mistrial, but once again effectively sustained the Defendants' objection by advising Terpstra to "clean up" the questions of the venire panel. The Defendants do not explain how a sustained objection can support a finding of an abuse of discretion in permitting allegedly improper voir dire.

Later, during the Defendants' voir dire, counsel advised the venire panel that it was the Defendants' position that the most qualified person could be hired for a job for any reason, so long as it is not "because of that person's age, gender, [or] race." A member of the venire panel asked for clarification, noting that the day prior, there had been discussion about sole versus contributing factors in making hiring decisions.[6] The Defendants'

---

[6]The previous day, Terpstra's counsel explained to the venire panel that Terpstra had the burden of proof to demonstrate that Terpstra's age was a contributing factor in the Defendants' hiring decision. A venireperson then asked for a clarification: "So for a trial to be considered discriminatory based on age, it doesn't necessarily have to be that sole point. It has to be a contributing factor?" Terpstra's counsel responded, "Exactly. See? If I can get you

counsel responded that "The law says because of their age. You cannot discriminate against someone because of their age." Terpstra's counsel objected and, outside the hearing of the jury, complained that the Defendants were misstating the law. The trial court agreed, and advised that references to age as a factor needed to refer to age as a "contributing factor." When the Defendants' voir dire continued, the Defendants responded to the venireperson's request for clarification by stating that age could not be a contributing factor in a hiring decision and that the trial court would later instruct the jury on the law applicable to the case. Terpstra did not instruct the venire panel on the law regarding this subject during the Defendants' voir dire. Rather, the Defendants did as instructed by the trial court, rendering the Defendants' discussion of this portion of voir dire irrelevant to the Defendants' point on appeal.

Finally, the Defendants complain that Terpstra's counsel improperly instructed the venire panel about the burden of proof. However, it was the Defendants, during their own voir dire, who made the statement that the Defendants did not have the burden of proof. When Terpstra objected, the trial court instructed the venire panel that "the burden of proof to prove age was a contributing factor to the adverse employment action is on the plaintiff, not the defendant, [which] will be subject to any additional instructions that I will give you later." It was thus the trial court, not Terpstra, who addressed (correctly, we observe) the subject of the burden of proof with the jury.

---

guys to talk, you can do a better job than I can. That's exactly right. Doesn't have to be the sole factor." The Defendants did not object to Terpstra's explanation of the burden of proof and of the standard for age discrimination.

9

The record simply does not support the premise of the Defendants' point on appeal. However, even were we were to conclude (which we do not) that Terpstra improperly discussed the law with the venire panel in any of the aforementioned respects, we would not find reversible error. The Defendants bear the burden of establishing not only an abuse of discretion in permitting voir dire, but that they were prejudiced by the error. At the end of the argument portion of their brief addressing the first point on appeal, the Defendants devote a single sentence to the subject of prejudice, summarily asserting: "By allowing Terpstra's counsel to explain the law and then shut down the [Defendants'] counsel when she tried to follow up, the trial court gave the impression that Terpstra's counsel was the only one who could explain the law to them."[7] [Appellants' Brief, p. 30]

When viewed in light of the entire record, the Defendants' summary allegation of prejudice is disingenuous and inaccurate. We have already explained that the Defendants' assertion that Terpstra instructed the venire panel on the law is not supported by the record, and that instead, it was the trial court who either addressed legal issues with the venire panel, or advised the parties how to do so. In addition, before voir dire began, the trial court told the venire panel, "It is my job to instruct you in the law which you are to apply to those facts," and cautioned the venire panel not to "discuss or attempt to research what

---

[7]The Defendants' reply brief sets forth a different claim of prejudice: "[Terpstra's] counsel answered objections in front of the jury and gave the impression that what he said was the law and that what he was saying was proper, all the while preventing the [Defendants] from asking their questions or rebutting his selective presentation of the law. The questions posed by counsel required the venire panel to speculate on their own reactions to the set of circumstances he was providing to them, which created prejudice." [Reply Brief, p. 8] We will not address this separate assertion of prejudice. *See Jefferson City Apothecary, LLC v. Mo. Bd. of Pharmacy*, 499 S.W.3d 321, 326 n.3 (Mo. App. W.D. 2016) ("'[A] reply brief is to be used only to reply to arguments raised by respondents, not to raise new arguments on appeal,'" so that "'[w]e do not review an assignment of error made for the first time in the reply brief.'" (quoting *Arch Ins. Co. v. Progressive Cas. Ins. Co.*, 294 S.W.3d 520, 524 n.5 (Mo. App. W.D. 2009))).

the law may be in this case."  Both of those instructions made clear that the trial court, not counsel for the parties, would be providing instruction about the applicable law.  Once voir dire was complete and the jury was sworn, the trial court advised the impaneled jury that the instructions provided by the trial court "will direct you concerning the legal rights and duties of the parties and how the law applies to the facts that you will be called upon to decide."  These instructions from the trial court collectively demonstrate that the venire panel, and later the jury, was advised to look to the trial court, not the parties, for guidance on the legal principles governing disposition of the case.  The Defendants' bare assertion that the trial court gave the impression that Terpstra's counsel was the one who could explain the legal principles governing Terpstra's claims is baseless.

Moreover, the Defendants have not identified any legal discussion that allegedly occurred during voir dire that was inconsistent with the instructions later given to the jury by the trial court.  Those instructions informed the jury of the burden of proof, instructing that "[t]he party who relies upon any disputed fact has the burden to cause you to believe that such fact is more likely true than not true." Those same instructions informed the jury that the standard of causation for Terpstra's claim of age discrimination was that "Terpstra's age was a contributing factor in her being denied promotion," and that the standard of causation for Terpstra's claim of retaliation was that "[Terpstra's] filing a complaint with the [MCHR] was a contributing factor to her being demoted."  A comparison of these instructions to the aspects of voir dire about which the Defendants complain on appeal reveals that the venire panel was not misled during voir dire.  The Defendants have failed to demonstrate a real probability that they suffered prejudice based on an alleged (but

11

ultimately undemonstrated) assertion that the trial court abused its discretion by permitting Terpstra's counsel to inform the venire panel of the applicable law.

The Defendants' first point on appeal is denied.

*Point Two: Admission of Emails that Resulted in the Demotion of Three Employees*

The Defendants' second point on appeal argues that the trial court erred in admitting emails that resulted in the demotion of three DES employees who had been previously promoted to the position of senior claims supervisor. The Defendants describe the emails as "inappropriate" because they contained "some obscene language, [and discussions regarding] drinking outside work, and having hangovers at work." [Appellants' Brief, pp. 15, 35 n.2] The Defendants assert that the emails were not logically relevant to Terpstra's claim of employment discrimination in August 2010 because they resulted in demotions in September 2012. The Defendants further assert that the emails were not legally relevant because the subject matter of the emails served solely to prejudice the jury against the employees who were demoted and, by extension, the Defendants.[8]

Despite asserting that "[t]he trial court improperly admitted e-mail evidence that lacked relevance . . . [and] that served only to demonstrate that other employees had, in the past, engaged in prior bad acts that were not at all relevant to Terpstra's claims," the Defendants do not indicate where in the record this alleged error was preserved for

---

[8]The Defendants assert in the argument portion of their brief that the emails should not have been admitted into evidence because the manner in which Terpstra's counsel obtained the emails allegedly violated discovery rules. Because the discovery issue is not encompassed with the Defendants' point relied on, we will not address it. "'Claims of error raised in the argument portion of a brief that are not raised in a point relied on are not preserved for our review.'" *Davis v. Wieland*, 557 S.W.3d 340, 352 n.10 (Mo. App. W.D. 2018) (quoting *C.S. v. Mo. Dep't of Soc. Servs.*, 491 S.W.3d 636, 656 (Mo. App. W.D. 2016)).

12

appellate review. [Appellants' Brief, p. 32] Rule 84.04(e) requires appellants to include in the argument "a concise statement describing whether the error was preserved for appellate review; if so, how it was preserved; and the applicable standard of review" for each claim of error. Compliance with Rule 84.04 is mandatory. *Scott v. King*, 510 S.W.3d 887, 891 (Mo. App. E.D. 2017).

The Defendants' brief cites to a location in the transcript where they claim to have objected to admission of the emails based on Terpstra's failure to exhaust discovery remedies.[9] This reference in the brief is not cited for the proposition that an objection to logical or legal relevance was preserved at trial. Our independent review of the cited objection, located at Vol. 9, pp. 127-28 of the transcript, reveals that the Defendants did make a cursory objection to the logical and legal relevance of the emails. However, when the emails were later discussed at trial during the testimony of several witnesses, no objection to discussion or admission of the emails on the basis of relevance was made by the Defendants. In the statement of facts, the Defendants' brief cite to nearly seventy pages spanning three volumes of the transcript where Terpstra's counsel asked the three DES employees who were demoted about the content of the emails, but the Defendants have not advised us where, during this extended testimony, an objection to the admission of the testimony or the emails on the basis of relevance was ever made.

---

[9]The Defendants' brief cites to an objection they lodged during trial regarding the means that Terpstra's counsel used to obtain the emails. The Defendants' objection argued that, because Terpstra never filed a motion to compel production of the emails, they could not be used at trial. As discussed in *supra* note 8, the discovery issue is not encompassed within the Defendants' second point on appeal so that we will not address it.

While our Supreme Court's preference is for cases to be decided on the merits, we will not comb the record to locate when, if at all, the Defendants preserved their objection to the admission of emails, as that would result in this court "becom[ing an] advocate[] by inferring facts and arguments that the [Defendants] failed to assert." *Scott*, 510 S.W.3d at 891-92. It is for this very reason that Rule 84.04(e) mandates that an appellant inform this court whether and how claimed error was preserved on appeal. On that basis alone, the Defendants' second point on appeal must be dismissed.

In addition, the Defendants have failed to deposit the emails they allege were improperly admitted into evidence with this court. Rule 81.12(a) requires the record on appeal to include "all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." "If original exhibits are necessary to the determination of any point relied on, they shall be deposited in the appellate court ***by the appellant***." Rule 81.16(a) (emphasis added). Though the Defendants' point on appeal requires us to assess the admissibility of the referenced emails, the Defendants have failed to provide us with the emails. "Where, as here, the record does not contain all of the documents necessary for this court to determine the issue presented, our review is impossible and the claim of error must be dismissed." *Oldham v. Oldham*, 223 S.W.3d 886, 887 (Mo. App. W.D. 2007).

The Defendants' second point on appeal is dismissed.

***Point Three: Admission of Testimony from "Me-Too" Witnesses***

The Defendants' third point on appeal argues that the trial court erred in admitting testimony from three "me-too" witnesses: Scott Stimson ("Stimson"), Jeffrey Forrester

14

("Forrester"), and Karen Berendzen ("Berendzen").[10]  The Defendants assert that the trial court should not have allowed these witnesses to testify about discriminatory statements, actions, or conduct by the Defendants that was unrelated to Terpstra's claims of age discrimination and retaliation because the "me-too" testimony was not relevant.  The Defendants assert that the "me-too" witnesses' experiences were neither similar in time nor circumstance to Terpstra's claims of age discrimination and retaliation so that, using the standard for relevancy articulated in *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107 (Mo. banc 2015), the trial court should have excluded the testimony from these "me-too" witnesses.  The Defendants further claim that, instead of following the standard for relevancy articulated in *Cox*, which requires an individualized balancing of the probativeness of each "me-too" witness's testimony, the trial court made a blanket ruling concluding the testimony of "me-too" witnesses was admissible.

As discussed *supra*, Rule 84.04(e) requires appellants to "include a concise statement describing whether the error was preserved for appellate review; if so, how it was preserved; and the applicable standard of review."  In an ostensible effort to comply with this requirement, the Defendants indicate that they "raised . . . objections in their motions in limine and again during testimony as each [witness] testified."  [Appellants' Brief, pp. 39-40]

---

[10]In addition to those three witnesses, the Defendants characterize three other witnesses as "me-too" witnesses in their statement of facts: Betty Means, Beverly Sommerer, and Ann Spillars.  The argument portion of the Defendants' brief does not further address these three witnesses.  The failure to develop an argument about the admissibility of these witnesses' testimony in the argument section of the brief preserves nothing for review. *Wallace v. Frazier*, 546 S.W.3d 624, 628 (Mo. App. W.D. 2018).

15

Though it is true that the Defendants unsuccessfully filed a motion in limine seeking to exclude evidence of alleged discriminatory acts by "me-too" witnesses as irrelevant, a ruling on a motion in limine is interlocutory and subject to change during the course of the trial. *Beverly v. Hudak*, 545 S.W.3d 864, 875 (Mo. App. W.D. 2018). Thus, a motion in limine preserves nothing for appeal. *Id.* The Defendants' reference to their unsuccessful motion in limine does not serve the purpose of Rule 84.04(e), which requires the appellant to identify whether and how a claim of error was preserved for appellate review.

"'After the denial of its motion in limine, a party is required to object at trial to the introduction of the evidence and to reassert the objection in post-trial motions.'" *Kerr v. Mo. Veterans Comm'n*, 537 S.W.3d 865, 880 (Mo. App. W.D. 2017) (quoting *Wilkins v. Bd. of Regents of Harris-Stowe State Univ.*, 519 S.W.3d 526, 541 (Mo. App. E.D. 2017)). The Defendants' brief alleges that the Defendants objected on the basis of relevance during the testimony of Stimson, Forrester, and Berendzen. The Defendants refer this court, however, to only a single record cite. At that point in the record, the Defendants objected that allowing Berendzen to testify as a "me-too" witness about a 2015 promotion she did not receive would confuse the issues at trial.[11] The Defendants point this court to no instance where they objected at trial to Stimson's "me-too" testimony or Forrester's "me-too" testimony on the basis of relevancy. As we noted *supra*, compliance with Rule 84.04(e) is mandatory so that "appellate courts do not become advocates by inferring facts

---

[11]Berendzen also testified about a 2010 promotion she did not receive. The Defendants did not object to this testimony during trial, so any claim of error relating to the admission of this testimony is not preserved for appellate review. *Kerr*, 537 S.W.3d at 880.

16

and arguments that the appellants failed to assert."[12] *Scott*, 510 S.W.3d at 891-92. The Defendants' claim of error in admitting "me-too" evidence from Stimson and Forrester is not preserved for our review.

Our review of the Defendants' third point on appeal is limited, therefore, to a review of whether the trial court abused its discretion in admitting Berendzen's "me-too" testimony regarding the 2015 promotion she did not receive. Our standard of review of a trial court's decision to admit evidence over an objection is for abuse of discretion. *Hesse v. Mo. Dep't of Corr.*, 530 S.W.3d 1, 5 (Mo. App. W.D. 2017). A trial court abuses its discretion when the evidentiary ruling "'is clearly against the logic of the circumstances . . . and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.'" *Id.* (quoting *Cox*, 473 S.W.3d at 114). If reasonable persons could disagree about the propriety of the trial court's ruling, then we will not conclude that the trial court abused its discretion. *Reed v. Kansas City Mo. Sch. Dist.*, 504 S.W.3d 235, 240 (Mo. App. W.D. 2016).

---

[12]Despite the Defendants' failure to provide a concise statement demonstrating how they preserved their objection to Stimson's testimony and Forester's testimony, we have reviewed the transcript. The Defendants failed to preserve their challenge to either witness's testimony on the basis of relevance by making a timely and appropriate objection. Before Stimson testified, the Defendants asserted that Stimson was not a proper "me-too" witness in that his claims of discrimination did not stem from the same period of time as Terpstra's claims of age discrimination and retaliation, and that, because Stimson was promoted to claims supervisor, he could not make a claim of discrimination. The trial court overruled the Defendants' objection, explaining that because "we don't know what [Stimson's] going to say yet," it could not make a ruling as to whether Stimson was an appropriate "me-too" witness. The trial court instructed the Defendants to make their evidentiary objections "***at the appropriate time***." (Emphasis added.) Even though Stimson later testified about how he was passed over for a promotion to senior claims supervisor in 2010, the Defendants did not object. With respect to Forrester's testimony, the Defendants made no objection, either before he testified or while he testified, to admission of evidence about the promotions he unsuccessfully applied for in 2010, 2011, and 2012. The Defendants' failure to lodge timely objections during Stimson's and Forester's testimony is fatal to their claim that the trial court erred in admitting their testimony. *See Kerr*, 537 S.W.3d at 880 ("'An appellant's failure to preserve an issue at the trial court waives the issue, and it is not reviewable on appeal.'" (quoting *Ryan v. Maddox*, 112 S.W.3d 476, 479 (Mo. App. W.D. 2003))).

Terpstra's theory at trial was that the Defendants discriminated against her on the basis of age, promoting younger, less qualified persons to the senior claims supervisor positions in 2010. Terpstra argued that testimony from similarly situated persons regarding their treatment by the Defendants corroborated her claim of age discrimination and confirmed the existence of the Defendants' discriminatory intent. Our Supreme Court has explained that this type of circumstantial evidence is often necessary in cases claiming discrimination on the basis of a protected class like age because "'employers are shrewd enough not to leave a trail of direct evidence.'" *Cox*, 473 S.W.3d at 116 (quoting *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 n.4 (Mo. banc 2007)).

Circumstantial evidence, like all other types of evidence, must be both logically and legally relevant to be admissible. *Id.* "'Evidence is logically relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or if it tends to corroborate evidence which itself is relevant and bears on the principal issue of the case.'" *Id.* (quoting *State v. Tisius*, 92 S.W.3d 751, 760 (Mo. banc 2002)). Legal relevance requires the trial court to "'weigh the probative value, or usefulness, of the evidence against its costs, specifically the dangers of unfair prejudice, confusion of the issues, undue delay, misleading the jury, waste of time, or needless presentation of cumulative evidence.'" *Holdeman v. Stratman*, 556 S.W.3d 46, 52 (Mo. App. W.D. 2018) (quoting *Kroeger-Eberhart v. Eberhart*, 254 S.W.3d 38, 43 (Mo. App. E.D. 2007)). If the probative value of the evidence outweighs its costs, then the evidence is legally relevant and should be

18

admitted. *Id.* But if the costs of the evidence outweighs its probative value, then the evidence should be excluded. *Id.*

*Cox v. Kansas City Chiefs Football Club* examined the application of the concepts of logical and legal relevance to "me-too" testimony. In *Cox*, our Supreme Court reviewed the trial court's blanket exclusion of all evidence regarding the firings of other older employees, including evidence of their age, the fact of their termination by the employer, and of their pending lawsuits against the employer. 473 S.W.3d at 116. The Court held that the blanket exclusion of the "me-too" testimony was error because the evidence should have been "subject to an individualized balancing of probativeness with prejudice as to each such example of circumstantial evidence of discrimination." *Id.* at 119, 118. An individualized assessment of legal relevance requires the trial court to consider carefully the logical relevance of each piece of "me-too" evidence as weighed against the evidence's prejudicial effect. *Id.* at 122. In determining the logical relevance of "me-too" testimony, the trial court must "look to and weigh *aspects* of similarity as appropriate given the facts, context, and theory of the specific case at issue." *Id.* at 123. Factors to consider include geographic and temporal similarities; whether the same decision makers were involved; the similarity of treatment; and whether the witness and plaintiff were otherwise similarly situated. *Id.*

The Defendants claim that the trial court misapplied the law when it denied their objection to Berendzen's testimony. The Defendants assert that contrary to *Cox*, the trial court made a blanket ruling that all "me-too" testimony was admissible. They base this conclusion on the fact that when the trial court denied their objection to Berendzen's

19

testimony, the trial court stated that it believed the "*Cox* case allows that evidence to come in." Of course, this on-the-record statement is susceptible to a different conclusion than that reached by the Defendants. The trial court's reference to *Cox* can as easily be read to suggest that the trial court understood it was required to make an individualized assessment of the logical and legal relevance of Berendzen's testimony.

We comfortably reach the conclusion that the trial court properly relied on *Cox* to overrule the Defendants' objection to Berendzen's testimony based on the trial court's reference to *Cox* at other times during the proceedings. When the trial court denied the Defendants' motion in limine seeking exclusion of "me-too" testimony, it did so for the express reason that *Cox* required an individualized assessment of the relevance of "me too" evidence--an assessment that could not be made without the benefit of hearing the testimony in the context of a trial record. In fact, when the Defendants' motion in limine was denied, the trial court told the Defendants that they would be required to make an objection to each "me-too" witness's testimony, addressing on each occasion the individualized basis for objecting to relevancy. In keeping with this guidance, when the Defendants objected to Stimson as a "me too" witness before his testimony began, the trial court overruled the objection because it was not yet clear what Stimson would say, making it impossible for the trial court to conduct the individualized relevancy assessment required by *Cox*. It is plain, in light of these rulings and comments, that the trial court's reference to *Cox* when it overruled the Defendants' objection to Berendzen's testimony reflected an accurate understanding and application of the law.

20

The Defendants alternatively argue that even assuming the trial court properly applied the law as described in *Cox*, it abused its discretion in doing so because an individualized assessment of Berendzen's testimony did not establish logical or legal relevance. We disagree.

Berendzen was 58 years old at the time of trial, and like Terpstra, she worked for DES in the JCRCC. Berendzen testified that, while she had been promoted to senior claims supervisor approximately two months before trial, in 2015, she had applied for a promotion as a senior claims supervisor which she did not receive though a younger person was selected. Because Terpstra and Berendzen both worked for DES in the JCRCC, and because both applied for the same position for which they were rejected in favor of younger applicants, Berendzen's testimony was logical relevant as it corroborated Terpstra's claim of age discrimination and suggested that the Defendants possessed discriminatory intent. The difference in time and circumstance is not so significant as to render the probative value of Berendzen's testimony outweighed by its prejudicial effect, and would instead go to the weight of the testimony. The trial court did not abused its discretion in admitting Berendzen's testimony.

The Defendants' third point on appeal is denied.

### Point Four: Sufficiency of Evidence to Support the Punitive Damages Instruction

The Defendants' fourth point on appeal argues that the trial court erred in submitting a punitive damages instruction because Terpstra failed to present evidence that the Defendants engaged in outrageous conduct stemming from an evil motive or reckless indifference.

Before we reach the merits of the Defendants' fourth point on appeal, we must first determine whether the issue is preserved for our review. *Mansfield v. Horner*, 443 S.W.3d 627, 638 (Mo. App. W.D. 2014). "[I]n a civil, jury-tried case, it is necessary, 'to preserve the question of submissibility for appellate review, to file a motion for directed verdict at the close of all evidence and to assign the error of the court in having failed to have directed such a verdict in an after-trial motion' . . . .'" *Heifetz v. Apex Clayton, Inc.*, 554 S.W.3d 389, 395 (Mo. banc 2018) (quoting *Ukman v. Hoover Motor Express Co.*, 269 S.W.2d 35, 36 (Mo. 1954)). "'A motion for directed verdict at the close of all evidence becomes the meaningful motion to preserve the issue as it presented itself to the trial court at that time, prior to submission to the jury.'" *Id.* (quoting *Sanders v. Ahmed*, 364 S.W.3d 195, 207 (Mo. banc 2012)). Once a verdict has been reached, a motion for JNOV is required to preserve any submissibility issues for appeal. *Sanders*, 364 S.W.3d at 207-08. To be properly granted, a motion for JNOV must correctly identify at least one element of the plaintiff's case that is not supported by evidence. *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2007).

With respect to the issue of preservation, the Defendants assert in their brief that, "As [they] argued in [their] directed verdict motions, at the jury instruction conference, at closing, and in [their] post-trial motion, the trial court . . . should not have submitted punitive damages to the jury." [Appellants' Brief, p. 43] Later in the argument portion of the brief, the Defendants provide specific citations to the record where they raised the issue of submissibility of punitive damages in their motion for a directed verdict and during the instruction conference, and where they argued to the jury that there was no evidence of evil

22

motive or reckless indifference to support an award of punitive damages. The Defendants provide no citation to the record, however, to support their assertion that they made the same argument in their Post-Trial Motion.

Our review of the Defendants' Post-Trial Motion reveals that it devotes a single sentence to the topic of punitive damages: "Additionally, *in lieu of JNVO or a new trial*, and pursuant to [Rule] 78.10, Defendants move the court for an elimination of punitive damages and a more reasonable assessment of attorneys' fees." (Emphasis added.) The Post-Trial Motion did not contest the sufficiency of the evidence to submit punitive damages to the jury, and by its plain terms sought only the relief of remittitur (the subject of Rule 78.10) with respect to the award of punitive damages.[13] Because the Post-Trial Motion did not claim error in the submission of punitive damages to the jury, the issue is not preserved for our review.

The Defendants' fourth point on appeal is dismissed.

### Point Five: Failure to Reduce the Punitive Damages Award

The Defendants' fifth point on appeal argues that the trial court committed error "in denying a motion for remittitur of the punitive damages award because under the state rules of remittitur and the federal due process clause the punitive damages award was impermissibly excessive given that it was thirteen times [Terpstra's] compensatory damages and there is no other discrimination to deter at the workplace." [Appellants' Brief, p. 49] This point on appeal is necessarily limited in its application to DES. The punitive

---

[13]The trial court's failure to remit the award of punitive damages is the subject of the Defendants' fifth point on appeal.

23

damage award against DES was in the amount of $260,000--an amount that is thirteen times the $20,000 awarded Terpstra in actual damages. No claim of error is asserted on appeal with respect to the $20,000 award of punitive damages against Lambert.[14]

DES asserts that it "argued . . . in its post-trial motion" that remittitur was appropriate because the punitive damages award was excessive.[15] [Appellants' Brief, p. 49] Later in the brief, however, DES asks us to review the issue of remittitur for plain error because the claim of error "was not included in the [Post-Trial Motion]." DES does not explain the contrary positions taken in its brief with respect to preservation of the claim of error relating to remittitur.

We have already explained, *supra*, that the Post-Trial Motion sought, "in lieu of JNOV or new trial, and pursuant to [Rule 78.10], . . . an elimination of punitive damages." Rule 78.10(a) provides that a party "requesting . . . remittitur shall file a motion for such relief within the time prescribed by Rule 78.04 for filing a motion for new trial." Rule 78.10(a) does not describe what must be included in a motion requesting remittitur, and we have located no case law addressing the subject. However, as a general matter, Rule 78.09 requires a party, "at the time the ruling or order of the court is made or sought, [to make] known to the court the action that the party desires the court to take or objections to the action of the court *and grounds therefor*." The failure to do so "precludes a party from obtaining appellate review of error in the trial court's ruling or order." *Brown v. Brown*,

---

[14]The Judgment did not award Terpstra punitive damages against the LIRC.

[15]The Defendants also assert that that they raised the issue of remittitur "at the jury instruction conference." [Appellants' Brief, p. 49] Under section 537.068 a remittitur order is appropriate "if, after reviewing the evidence in support of a *jury's verdict*, the court finds that the jury's verdict is excessive." (Emphasis added.) Any request for remittitur prior to the jury making its verdict would have been premature.

423 S.W.3d 784, 787 (Mo. banc 2014). Here, the Post-Trial Motion neither argued nor explained why the punitive damage was excessive and subject to remittitur pursuant to Rule 78.10. DES's claim of error relating to the failure to order remittitur is not preserved for appellate review.

DES nonetheless asks us to review the trial court's failure to order remittitur of the punitive damages award for plain error. Plain error review is available, at our discretion, for "errors affecting substantial rights" if we "find[] that manifest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c). Plain error review is a two-step inquiry. *Riggs v. State Dep't of Soc. Servs.*, 473 S.W.3d 177, 186 (Mo. App. W.D. 2015). "'We first determine whether or not the error is plain, and second, we determine whether or not manifest injustice or miscarriage of justice would result if the error is left uncorrected.'" *Id.* (quoting *Hammett v. Atcheson*, 438 S.W.3d 452, 463 (Mo. App. W.D. 2014)). Reversal for plain error in civil cases is rare and is only appropriate "'when the injustice of the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case.'" *Id.* (quoting *Snellen ex rel. Snellen v. Capital Region Med. Ctr.*, 422 S.W.3d 343, 357 (Mo. App. W.D. 2013)).

Though DES's point relied claims error based on the failure to remit the punitive damages award pursuant to Rule 78.10, the argument portion of the brief does not further develop the point on appeal, and is devoted exclusively to DES's claim that the punitive damages award was constitutionally excessive, a claim we discuss *infra*. We refuse to exercise our discretion to conduct plain error review of a claim of error regarding violation

25

of Rule 78.10 when that claim has not been developed in the argument portion of DES's brief.

DES's point on appeal separately argues that the punitive damages award was constitutionally excessive in violation of due process. "'Remittitur and a constitutionally reduced verdict, though potentially achieving the same result, are in theory different.'" *Diaz v. AutoZoners, LLC*, 484 S.W.3d 64, 89 n.28 (Mo. App. W.D. 2015) (quoting *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 412 n.71 (Mo. App. E.D. 2014)). "'[R]emittitur is a substitution of the court's judgment for that of the jury regarding the appropriate award of damages.'" *Id.* (quoting *Blanks*, 450 S.W.3d at 412 n.71); *see also* section 537.068. "'In other words, the court may order remittitur relief when the jury awards a verdict that is simply too bounteous under the evidence.'" *Id.* (quoting *Blanks*, 450 S.W.3d at 412 n.71). "'A constitutional reduction, on the other hand, is a determination that the law does not permit the award.'" *Id.* (quoting *Blanks*, 450 S.W.3d at 412 n.71). "'Unlike a remittitur, which is discretionary with the court, a court has a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due-process clause.'" *Id.* (quoting *Blanks*, 450 S.W.3d at 412 n.71).

To raise a constitutional challenge properly, a party must:

(1) raise the constitutional question at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated . . . (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review.

*Mayes v. Saint Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 266 (Mo. banc 2014) (quoting *United C.O.D. v. State*, 150 S.W.3d 311, 313 (Mo. banc 2004)). "The purpose of

26

this rule is 'to prevent surprise to the opposing party and permit the trial court an opportunity to fairly identify and rule on the issue.'" *Id.* (quoting *Winston v. Reorganized Sch. Dist. R-2, Lawrence Cnty., Miller*, 636 S.W.2d 324, 327 (Mo. banc 1982)).

DES did not raise its constitutional question at the first available opportunity--in its Post-Trial Motion. Cognizant of this fact, DES requests plain error review. "Plain error review, however, rarely is granted in civil cases." *Id.* at 269. Error, if any, in the award of $260,000 in punitive damages against DES is not evident, obvious, or clear. *See Diaz*, 484 S.W.3d at 91 (rejecting a preserved claim that a 13:1 ratio of punitive to compensatory damages violated due process violation). We are not persuaded that the unpreserved error about which DES complains is "'so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case.'" *Riggs*, 473 S.W.3d at 186 (quoting *Snellen ex rel. Snellen*, 422 S.W.3d at 357). We decline to review DES's newly asserted, unpreserved claim of constitutional error for plain error.

The Defendants' fifth point on appeal, which applied only to the award of punitive damages against DES, is denied.

*Point Six: Award of Attorneys' Fees*

The Defendants' sixth point on appeal argues that the trial court's award of attorneys' fees constituted an abuse of discretion. The Defendants assert that the trial court erred in two respects. First, the Defendants claim that the trial court used an unreasonable hourly rate in calculating the award. And second, the Defendants contend that the trial court's use of a multiplier was unnecessary in that it created a windfall for Terpstra's counsel contrary to Missouri law.

27

Before we reach the merits of the Defendants' sixth point on appeal, we first note that the point fails to comply with Rule 84.04(e)'s briefing requirement that appellants "include a concise statement describing whether the error was preserved for appellate review; if so, how it was preserved; and the applicable standard of review." While the Defendants have correctly asserted that we review the trial court's award of attorneys' fees for an abuse of discretion, the Defendants do not include a concise statement of whether and how this alleged error was preserved for appellate review. Despite the Defendants' failure to comply with Rule 84.04(e), the record is clear that, in response to Terpstra's motion for the court to award attorneys' fees, the Defendants filed suggestions in opposition arguing that the hourly rate suggested by Terpstra was unreasonable and that no multiplier was necessary. And the Post-Trial Motion raises the same concerns about the attorneys' fees award. This point on appeal is preserved for our review.

We review the trial court's award of attorney's fees for abuse of discretion. *Hoeper v. Liley*, 527 S.W.3d 151, 158 (Mo. App. W.D. 2017). The trial court abuses its discretion when its "'decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice.'" *Id.* (quoting *Howard v. City of Kansas City*, 332 S.W.3d 772, 792 (Mo. banc 2011)). ""The trial court is considered an expert on fees, given its familiarity with all of the issues in the case and with the character of the legal services rendered,' and 'may determine attorney fees without the aid of evidence.'" *Id.* (quoting *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 55 (Mo. App. W.D. 2016)). "'We will not reverse [the award of attorneys' fees] unless we find that the amount was arbitrarily arrived at or is so unreasonable as to indicate indifference and a lack of proper

28

judicial consideration." *Ferguson v. Curators of Lincoln Univ.*, 498 S.W.3d 481, 497 (Mo. App. W.D. 2016).

The general rule in Missouri is that "'attorney fees are not awarded to every successful litigant.'" *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 431 (Mo. banc 2013) (quoting *Lucas Stucco & EIFS Design, LLC v. Landau*, 324 S.W.3d 444, 445 (Mo. banc 2010)). "However, attorneys' fees may be awarded when they are provided for in a contract or when they are authorized statutorily." *Id.* The MHRA provides that the trial court "may award . . . reasonable attorney fees to the prevailing party." Section 213.111.2.

"While the trial court has discretion to award reasonable attorneys' fees, there are factors that may be considered to determine the amount of attorneys' fees to award." *Berry*, 397 S.W.3d at 431. Factors considered include: the rates customarily charged by the attorney in the case and other attorneys in the community for similar services; the number of hours reasonably expended on the litigation; the nature and character of services rendered; the degree of skill required; the nature and importance of the subject matter of the litigation; the amount involved or result achieved; and the vigor of the opposition. *Id.* The starting point in determining reasonable attorneys' fees is the "lodestar." *Alhalabi v. Mo. Dep't of Nat. Res.*, 300 S.W.3d 518, 530 n.6 (Mo. App. E.D. 2009). The lodestar "is determined by multiplying the number of hours reasonably expended by a reasonable hourly rate." *Id.* A reasonable hourly rate is established according to "the rates customarily charged by the attorneys involved and by other attorneys in the community for similar services." *Selleck v. Keith M. Evans Ins., Inc.*, 535 S.W.3d 779, 786 (Mo. App. E.D. 2017).

29

"'[T]he relevant market for attorneys in a matter . . . may extend beyond the local geographic community,'" so that "'[a] national market or a market for a particular legal specialization may provide the appropriate market'" for determining the reasonable hourly rate. *Ferguson*, 498 S.W.3d at 497 (quoting *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993)).

The Defendants argue that the trial court's calculation of the lodestar "[was] not reflective of rates awarded to other attorneys who have similar experience and expertise in employment litigation." [Appellants' Brief, p. 57] Here, Terpstra's Motion for Attorneys' Fees and Costs acknowledged that counsel's usual and customary hourly rates were $325.00 for attorney Roger Brown, $210.00 for attorney Hong Chen, $185.00 for attorney Jason McClitis, and either $85.00 or $95.00 for paralegals. Nonetheless, Terpstra's Motion for Attorneys' Fees asserted that the application of the lodestar factors would support a trial court setting a reasonable hourly rate for attorney Roger Brown at $475.00, for attorney Hong Chen at $300.00, for attorney Jason McClitis at $210.00, and for paralegals at $125.00. To support her request to use an hourly rate higher than the one customarily charged by her attorneys, Terpstra's Motion for Attorneys' Fees attached affidavits from other attorneys with similar experience and similar knowledge of employment discrimination claims regarding their rates; billing statements showing the hours expended on the case; and judgments awarding attorneys' fees in similar cases in Cole County.

The Judgment found that Terpstra's request to set an hourly rate above counsel's usual and customary rate was a reasonable request, as: litigation of the case took over four years, and involved fifteen days of trial over several weeks; billing statements revealed that

30

Terpstra's counsel committed substantial time to the case without compensation; counsel expended $20,000 of his own funds in expenses that would not be reimbursed; the case was in the public interest; the contingent nature of the case meant that Terpstra's counsel risked no compensation for either hours or costs expended; and Terpstra's counsel ultimately achieved a compensatory damages verdict and two punitive damages verdicts. The trial court did not use the hourly rates suggested by Terpstra's Motion for Attorneys' Fees. Instead, the Judgment set an hourly rate for attorney Roger Brown at $405.00, for attorney Hong Chen at $250.00, for attorney Jason McClitis at $210.00, and for paralegals at $100.00.

The Defendants argue that these hourly rates "are not reflective of rates awarded to other attorneys who have similar experience and expertise in employment litigation." To support their claim, the Defendants refer to two Cole County and one DeKalb County employment cases wherein plaintiff's counsel was awarded attorneys' fees. The Defendants presented the same argument, including citation to the Cole County and DeKalb County employment cases, to the trial court, and the trial court accepted it in part, setting hourly rates lower than those requested by Terpstra's Motion for Attorneys' Fees. The Defendants argue on appeal that, in those cases, the total attorneys' fees awarded were much less than those awarded by the trial court's Judgment. However, only one of those cases includes the hourly rates used by the trial court to calculate the total award. In that case, while the total attorneys' fees awarded is lower than the trial court awarded in this case, the hourly rates are greater than the ones set by the trial court's Judgment.

31

Given the trial court's consideration of all the factors necessary for determining the lodestar, we cannot say that the trial court abused its discretion in its determination of reasonable hourly rates. The trial court is considered the expert in the determination of attorneys' fees, given its familiarity with Terpstra's case and the character of legal services provided by Terpstra's counsel. *See Hoeper*, 527 S.W.3d at 158. Although the trial court could have made the determination without the aid of evidence, the trial court had before it affidavits from other attorneys with similar experience and similar knowledge of employment discrimination claims regarding their rates; and judgments awarding attorneys' fees in similar cases in Cole County and DeKalb County. The Judgment's analysis of the factors necessary for determining the hourly rates used to calculate the lodestar demonstrates that the trial court did not arrive at the hourly rates arbitrarily or without proper judicial consideration. As such we cannot say that the trial court's calculation of the lodestar was an abuse of discretion.

The Defendants also complain about the trial court's use of a multiplier. After the trial court calculates the lodestar, it may also make "a finding that a multiplier [is] necessary to ensure a market fee that compensated . . . counsel for taking this case in lieu of working less risky cases on an hourly basis." *Berry*, 397 S.W.3d at 433. In doing so, though, the court "should avoid awarding a multiplier based upon facts that it considered in its initial determination of the lodestar amount." *Id.* at 432. The Defendants argue on appeal that usual hourly rate charged by Terpstra's counsel was adequate so that the trial court's use of the multiplier was unnecessary. The Defendants argue that Terpstra's Motion for

Attorneys' Fees and Costs failed to prove that the lodestar failed to provide the Defendants with adequate compensation.

Terpstra's Motion for Attorneys' Fees and Costs requested that the trial court apply a 2.0 multiplier, but suggested that if the trial court found the 2.0 multiplier too high under the circumstances, a multiplier between 1.25 and 2.0 would be appropriate. The trial court's Judgment concluded that a multiplier of 1.5 was appropriate. The Judgment reasoned that, in working on this type of public interest case on a contingent fee basis, Terpstra's counsel took the risk of not prevailing and endured the delay of payment for his services until the conclusion of litigation. The Judgment concluded that, in representing Terpstra in this litigation, Terpstra's counsel fronted expenses and turned down other cases that would generate an hourly fee due to time constraints. The Judgment further concluded that a multiplier was appropriate in order to encourage private attorneys to take these kinds of cases.

While the trial court also considered the contingent nature of the case in its determination of the lodestar, the trial court's consideration of other factors support application of the multiplier and demonstrate that the trial court did not abuse its discretion in setting a multiplier of 1.5. The trial court's conclusion that Terpstra's counsel declined representation of other cases that would generate hourly fees and its conclusion that a multiplier was appropriate to encourage private attorneys to take these kinds of cases is indicative of its careful consideration of whether a multiplier was necessary to ensure that Terpstra's counsel was compensated for representation of Terpstra. The Judgment's analysis demonstrates that the trial court did not arrive at the multiplier arbitrarily or

33

without proper judicial consideration. As such we cannot say that the trial court's calculation of the multiplier was an abuse of discretion.

The Defendants' sixth point on appeal is denied.

**Conclusion**

The trial court's Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur